May it please the Court. Counsel. Your Honors, Megumi Hisamatsu, my client, the appellant, my name is Stephen Shaw. Ms. Hisamatsu couldn't make it from Japan. It's quite an arduous task, and she's employed in Japan at this time. The Bank of Hawaii was to pay on forgeries, a very painful obligation. And when the forgery occurs, of course, the bank has a duty to its shareholders to investigate and so on. But there are strong incentives, particularly in the case where you have a half a million dollars in forgeries, not to quickly pay the claim, and in fact possibly even to figure out ways not to pay it. The problem here, at least a substantial problem, is that your client then gave the bank written instructions to pay it and to discount or disregard her prior request to hold off on payments. Well, what happened, Your Honor, is she filled out the claim forms, and then she unfortunately signed a... Well, she then called them and said, disregard all that, the disputes, it's all over, pay it out. And they said, no, come in and give us written instructions, and she then did that. Well, she did. She gave them written instructions when she filled out her affidavits, which was a proof of loss form, if you will. It says that I haven't ratified anything and that I these are forgeries and I authorized the bank to investigate and I will cooperate with the investigation. And, you know, please understand that I can give my records up to any law enforcement agencies in the context of cooperation, so she... Breyer's is correct in stating that after your client told the bank that these funds had been drawn as the result of forged instruments, that she called the bank and told them that she had changed her mind. Isn't that correct? Well... Why don't you start with a yes or no? I think that's a fair statement. Okay. And that then the bank would not accept her oral direction to withdraw the forgery claim-slash-allegation. They asked her to come in and sign a form so that they had written proof that she had changed her mind and that they were authorized to proceed in the way that they ultimately did, correct? Correct. The way that she had changed her mind was the way that in the other bank cases that I've outlined in my brief was simply this. She was telling the bank, apart from its affidavit form, I'm going over and I'm going to go to San Francisco and I'm going to try to get my money back from this forger. That shouldn't have put her in a position of gratification. She did not say, I changed my mind and I'm sure this happens with parents, dissolution cases. I agree to withdraw my forgery dispute regarding the checks. I direct the bank to release those funds from Nerula's account that had been held in suspense as a result of the forgery dispute. I agree to indemnify and hold harmless the Bank of Hawaii from and against any and all losses, et cetera. I mean, that's not saying, well, I'm going over to California to see what I can do about this. I mean, the bank wouldn't have taken an instruction like that. I think in the SCCI case there was a promissory note where a forgery victim had engaged in a promissory note transaction with the forger and that was decided not to be a ratification. I think the point I'm trying to make is that in terms of public policy, Your Honor, it's a good idea for forgery victims to try to get the money back from the forger in all cases, in cases of inter-family forgery or a marital dispute or employer-employee context. And I think the leeway that these, that the rules give people and the chances they have to avoid prosecution of a loved one or a friend encourage that exact result, which is get the money from the forger fast. But when the person is doing that, she shouldn't at the same time have to worry that her claims are going to be withdrawn or that somehow she's engaged in releasing the bank, unless the bank and her had expressly agreed to that. Well, I guess I'm a little troubled with your SCCI reliance, because as I read SCCI, it involved the relation of an Oregon civil compromise statute to the Oregon statute involving comparative negligence, allowing a forgery to occur, which is not here. And also in SCCI, nobody withdrew the forgery claim in writing to the bank and then tried to reassert it, as here, after the bank had released the forger's funds in accordance with her instruction. Well, I think when the bank supplies the written form and the bank drafts the written form and sends it to someone, the bank had every opportunity to include language instead of, I desire to wish or I desire to withdraw my forgery dispute. At that point, the bank should be able to withdraw the forgery. Are you saying the bank's form was unconscionable? I'm saying that it was actually violative of California's statutes, Civil Code 1710. Well, I understand that, but that has to do with fraud. And I guess the Court talked about fraud and said we're relying on 4406 in determining that that has no applicability, because 4406 is the appropriate statute upon which to rely. And they said that 4406 applies, a customary not-proof surgery, supporter claim, but may bring claims not dependent on proof of forgery. So I guess my worry is you didn't even fight that in your brief. Your Honor, the record shows that Judge Below was concerned about affirmative misrepresentations. In fact, he was holding us to affirmative misrepresentations. And what really happened was he pushed the common law of the State of California into a position that exceeds 1710, which is. Where in your briefing do you discuss the fact that the district court based its decision exclusively on 4406, and the preclusive effect of the withdrawal of the forgery claims under that section? In your opening brief. Where do you discuss that? I looked all over for it and couldn't find it. Well, I'll look here. Don't look very hard, because I don't think you'll find it. My word. Okay. Thank you. I don't want you to take all your time on that, because it isn't there. And I was trying to see if you were ever going to get there. Well, you know, the reason that I didn't get there is, again, 1710. And I agree that if we were in a state perhaps like Hawaii or maybe smaller states where our common law can ebb and flow because we have no statutes. But in California, the reason I cited the Vega case to the court in my brief was because in California, for better or for worse, 1710 is a fairly old statute. It's been around for a long time and has a development of case law that occurred after that. But since California is a code state, I don't think it was proper for the court. You don't believe that 4406 is a code? Yes, I do, but I think 1710 is a code. And you don't believe it preempted then, as the district court suggested, any reliance on your statute, 1710? I don't believe that. Because that's what the district court said. Well, then why didn't you appeal that? Why didn't you say that in your opening brief? Well, let me look in my ---- I have 4406 in the reply brief, but not 44 ---- Oh, that's the only place I found it. Right. In the reply, not the opening brief, which is essential for you to bring the issue before me. I see. Okay. But it's in 44 ---- it's in the reply brief. That's not enough under our rules, as you know. Okay. Well, the problem is, is that going back to the other cases in the banking area, there is no ratification when an individual ---- That's a different issue, ratification. Well, okay. And as I understand it, the questions that Your Honor have are that perhaps 4406 preempts California common law and 1710. Okay. The other item of public policy, besides early collection, involves settlement of disputes. And Ms. Hisamatsu, I feel, was the one who brought up the issue of settlement of disputes. And I think that she was penalized for attempting to settle her dispute with the forger, and I think that all of the efforts for her to settle have been more or less used against her in this case. And I do believe that the use of the language, withdraw my settlement dispute, was not sufficient to put anyone on notice that she was withdrawing any of her claims made against the bank. This was not a release with ---- The bank has said, Your Honor, that this is not a release. They admit that. So we do not go into the issue of whether or not the language was broad in scope, whether the language withdraw my settlement dispute equates to withdraw my claims against the bank, because the bank has said this is not a release. The other problem with the opinion, if it's left to stand, is that it creates a system of diversity of filings, where people think, Well, let's go into federal court because we'll get an easier run under Rule 12b-6. There are numerous cases in this decision or instances in this decision, which I put in my brief, where the judge has really said there's not enough facts. The complaint has minutia in facts. Counts and causes of action were dismissed without leave to amend. Ms. Isamatsu wasn't even given a day in court on a 12b-6 motion. None of this work below was to achieve justice in the sense that it was intended to lead to a trial on the merits in an orderly manner. This case was dismissed at the threshold on a motion to dismiss with no leave to amend. And even if you, on the fraud counts, if you go into Rule 9, which has a little more detailed requirement, there is sufficient who, what, when, where in this complaint to survive a Rule 9 motion had it been made. And the message that this case sends is that if you're a defendant, and not just a corporate defendant, any kind of defendant in state court, and there's diversity, come on over to federal court. Because what will happen is you'll get out easy. The other side, if they don't have enough facts in their complaint or the facts are not to the personal liking of a judge, you could be dismissed without leave to amend. And the case I cited in my brief on that issue is that we don't even have to ask for leave to amend, Your Honors. It should be given freely at this level. And the other problem which could come up, hopefully it will come up, is the standards on summary judgment. Does that lead to creating filings and removals because the standards are easier to get out on summary judgment if you're a civil defendant as opposed to a State of California court? All this is opening the floodgates to litigation. And for what reason? The rules say one thing. The standards under Rule 12 say one thing. As applied to this case, none of these standards were followed. Kennedy, you're over your time. Thank you, Your Honor. We'll give you one minute at the end. Thank you. Thank you. Good morning, Your Honors, and may it please the Court. Bob Dado for Appellee Bank of America. Here's my first question, Counsel. Absolutely. Did you hear anything in the argument we just heard that is not fully and effectively responded to in your brief? No. Thank you very much. Thank you. Thank you. All right. I don't think you need a minute to respond to that. So if we frequently do hear arguments that just consist of a repetition of the briefs, that's really not necessary. But you certainly have a right to oral argument if it's important and you haven't really made the point clear in the brief. I, for one, would not want to discourage people from oral argument in general, but if in a case like this the brief has answered everything that is said in oral argument, it isn't really necessary to respond. But that's what Judge Hawkins likes to call a teaching moment. So thank you all very much. The case just argued is submitted.
judges: Reinhardt, Hawkins, Smith N. R.